No. 25-6038

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LINNEY'S PIZZA, LLC,

*Plaintiff-Appellant,*

v.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Eastern District of Kentucky, No. 3:22-cv-00071 (Van Tatenhove, J.)

## APPELLANT'S OPPOSITION TO MOTION TO INTERVENE

Jennifer Kincaid Adams
BLACKBURN DOMENE BURCHETT PLLC
614 W. Main Street, Suite 3000
Louisville, KY 40202
(502) 371-0586
jadams@bdblawky.com

Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S. Main St., 5th Fl.
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Bryan Weir
Frank H. Chang
Cody Ray Milner
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209

*Counsel for Appellant*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

    A.   The debit-card transaction fee standard in Regulation II ................................2

    B.   Linney's Pizza filed this suit in 2022, and the Banking Associations declined to intervene for over two years .................................................................3

    C.   The Banking Associations belatedly moved to intervene, and the district court denied intervention. ...................................................................4

    D.   The Banking Associations declined to appeal the denial of intervention.......5

ARGUMENT...........................................................................................................5

I.    The Banking Associations' new motion to intervene is "procedural gamesmanship" and should be rejected..............................................................6

II.   The Banking Associations have no right to intervene on appeal, and in any event, cannot satisfy Rule 24(a)'s intervention-as-right factors ...........................................8

    A.   The Banking Associations' motion to intervene is untimely. ..........................9

    B.   The Board will adequately represent the Banking Associations' interests....14

III.  The Court should deny permissive intervention. ....................................................19

CONCLUSION......................................................................................................21

CERTIFICATE OF COMPLIANCE ....................................................................22

CERTIFICATE OF SERVICE .............................................................................22

# TABLE OF AUTHORITIES

## Cases

*Albright v. Ascension Mich.*,
 2024 WL 1114606 (6th Cir. Mar. 14)....................................................... 15, 18

*Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*,
 88 F.4th 495 (4th Cir. 2023)....................................................................6, 7

*Associated Builders & Contractors, Inc. v. Herman*,
 166 F.3d 1248 (D.C. Cir. 1999) .......................................................... 8, 20

*Bay Mills Indian Cmty. v. Snyder*,
 720 F. App'x 754 (6th Cir. 2018) ...............................................................13

*Blount-Hill v. Board of Educ. of Ohio*,
 195 F. App'x 482 (6th Cir. 2006) ...............................................................17

*Bradley v. Milliken*,
 828 F.2d 1186 (6th Cir. 1987) ............................................................ 15, 18

*Cahoo v. SAS Institute, Inc.*,
 71 F.4th 401 (6th Cir. 2023)........................................................1, 7, 12, 13

*Cameron v. EMW Women's Surgical Center*,
 595 U.S. 267 (2022) ......................................................................... 8, 11, 13

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
 144 S.Ct. 2440 (2024) ...................................................................................4

*Davis v. Lifetime Capital, Inc.*,
 560 F. App'x 477 (6th Cir. 2014) ......................................................... 9, 10

*Degamo v. Bank of America*,
 849 F. App'x 620 (9th Cir. 2021) .................................................................6

*Diamond v. Charles*,
 476 U.S. 54 (1986) ........................................................................................7

*Geier v. Sundquist*,
 94 F.3d 644 (6th Cir. 1996) ........................................................................18

*Grainger v. Ottawa Cnty.*,
 90 F.4th 507 (6th Cir. 2024)........................................................................19

*Hutchinson v. Pfeil*,
 211 F.3d 515 (10th Cir. 2000).......................................................................7

*In re Auto. Party Antitrust Litig.*,
33 F.4th 894 (6th Cir. 2022) ................................................................. 11, 12

*In re Brand Name Prescription Drugs Antitrust Litig.*,
115 F.3d 456 (7th Cir. 1997) ............................................................................ 6

*Jansen v. City of Cincinnati*,
904 F.2d 336 (6th Cir. 1990) .......................................................................... 10

*Kentucky v. EPA*,
2023 WL 2415219 (E.D. Ky. Mar. 8) ............................................................ 19

*Linney's Pizza, LLC v. Bd. of Governors of the Fed. Rsrv. Sys.*,
2023 WL 6050569 (E.D. Ky. Sept. 15, 2025) ................................................ 4

*Louisiana v. Burgum*,
132 F.4th 918 (5th Cir. 2025 .......................................................................... 16

*Me. Republican Party v. Dunlap*,
2018 WL 2248583 (D. Me. May 16) .............................................................. 19

*Miller State AFL-CIP v. Miller*,
103 F.3d 1240 (6th Cir. 1997) ........................................................................ 18

*Moses v. City of Perry*,
90 F.4th 501 (6th Cir. 2024) ............................................................................ 7

*NACS v. Bd. of Governors of Fed. Rrsv. Sys.*,
746 F.3d 474 (D.C. Cir. 2014) ......................................................................... 3

*NACS v. Bd. of Governors of Fed. Rrsv. Sys.*,
958 F. Supp. 2d 85 (D.D.C. 2013) ................................................................... 3

*Reliastar Life Ins. Co. v. MKP Investments*,
565 F. App'x 369 (6th Cir. 2014) .................................................................. 17

*Richardson v. Flores*,
979 F.3d 1102 (5th Cir. 2020) .......................................................... 7, 8, 19, 20

*Salem Pointe Capital, LLC v. BEP Rarity Bay, LLC*,
854 F. App'x 688 (6th Cir. 2018) .................................................................. 12

*Stupak-Thrall v. Glickman*,
226 F.3d 467 (6th Cir. 2000) ............................................................. 10, 11, 12, 13

*Tri-State Generation & Transmission Ass'n. v. New Mexico Pub. Regul. Comm'n*,
787 F.3d 1068 (10th Cir. 2015) ...................................................................... 16

*United States v. City of Detroit*,
712 F.3d 925 (6th Cir. 2013) .......................................................................... 12

*United States v. Michigan,*
424 F.3d 438 (6th Cir. 2005) ................................................................. 13, 15

*United States v. Tennessee,*
260 F.3d 587 (6th Cir. 2001) ................................................................. 12, 17

**Statutes**

15 U.S.C. §1693*o*-2(a) .................................................................................... 2

**Other Authorities**

7C Wright & Miller, *Fed. Prac. & Proc. Civ.* §1916 ............................................ 6, 8

**Rules**

76 Fed. Reg. 43,394 (July 20, 2011) ............................................................... 2, 3

80 Fed. Reg. 48,684 (Aug. 14, 2015) ................................................................ 3

## INTRODUCTION

For three years, the Banking Associations have watched this case from the sidelines. Only after the case went up to this Court and returned to the district court did the Banking Associations first belatedly seek to intervene. The district court rejected that attempted intervention as unnecessary, unjustified, and unfairly disruptive to the parties. The Banking Associations chose not to appeal the district court's decision denying their motion to intervene.

Now, seven months later, the Banking Associations move to intervene on appeal. But intervention on appeal is reserved for truly exceptional cases—not cases where unsuccessful intervenors seek to evade an adverse district-court intervention ruling. And this Court condemns "wait[ing] in the wings" and "wait-and-see" approaches to intervention, since it "add[s] considerable delay and cost to the litigation." *Cahoo v. SAS Institute, Inc.*, 71 F.4th 401, 413 (6th Cir. 2023) (cleaned up). The Banking Associations' motion to intervene on appeal is untimely. The Board remains competent to represent the Banking Associations' interests. And the Banking Associations' participation would add only expense and inconvenience to this appeal. The Court should deny intervention and let the Banking Associations present their arguments as they did below, as amici curiae.

## BACKGROUND

**A.  The debit-card transaction fee standard in Regulation II.**

In 2010, Congress passed the "Durbin Amendment" as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* Compl., R.1, PageID#5-6. The Durbin Amendment instructed the Board to prescribe regulations setting the allowable amount of debit-card transaction fees. 15 U.S.C. §1693*o*-2(a). To constrain the Board's rulemaking, Congress directed the Board to "distinguish between" two categories of costs. *Id.* §1693*o*-2(a)(4)(B). Costs in the first category—"incremental cost[s] incurred by [the bank] for the role of the [bank] in the authorization, clearance, or settlement of a particular electronic debit transaction"—"shall be considered." *Id.* §1693*o*-2(a)(4)(B)(i). But "other costs incurred by [a bank] which are not specific to a particular electronic debit transaction … shall not be considered." *Id.* §1693*o*-2(a)(4)(B)(ii).

In July 2011, the Board issued Regulation II, which sets the maximum allowable per-transaction interchange fee at 21 cents plus an additional 0.05% ad valorem per swipe to cover fraud losses. 76 Fed. Reg. 43,394, 43,422 (July 20, 2011). Despite Congress's directive that the Board "shall" consider incremental ACS costs but "shall not" consider other costs, 15 U.S.C. §1693*o*-2(a)(4)(B)(i)-(ii), the Board based Regulation II on a unwritten *third* category of costs—costs the Board described as those "that are not encompassed in either the set of costs the Board must consider under [§1693*o*-2(a)(4)(B)(i)], or the set of costs the Board may not consider under [§1693*o*-2(a)(4)(B)(ii)]." 76 Fed. Reg. at 43,426. The Board included in that third category of

costs (1) fixed ACS costs, (2) network-processing fees, (3) transaction-monitoring costs, and (4) fraud losses. *Id.* at 43,426, 43,429-31; Compl., R.1, PageID#20. Having included and considered this third category of costs, the Board's final 21-cent fee cap was a marked increase from the 12-cent fee cap in its proposed rule. *See* Compl., R.1, PageID#18-21.

Soon after Regulation II became final, a group of merchants challenged it in the U.S. District Court for the District of Columbia. That court determined that Regulation II "clearly disregarded Congress's statutory intent by inappropriately inflating all debit card transaction fees by billions of dollars." *NACS v. Bd. of Governors of Fed. Rrsv. Sys.*, 958 F. Supp. 2d 85, 86-87 (D.D.C. 2013). The D.C. Circuit, applying the now-defunct doctrine of *Chevron* deference to administrative agencies' acts of statutory interpretation, reversed. *See NACS v. Bd. of Governors of Fed. Rrsv. Sys.*, 746 F.3d 474 (D.C. Cir. 2014). The Board later issued an updated rule providing further explanation relating to transaction-monitoring costs. 80 Fed. Reg. 48,684 (Aug. 14, 2015). The updated rule doubled down on the "[t]he same rationale" deployed in Regulation II. *Id.* at 48,685.

**B.    Linney's Pizza filed this suit in 2022, and the Banking Associations declined to intervene for over two years.**

In December 2022, Linney's Pizza filed this APA suit challenging Regulation II and seeking declaratory and injunctive relief. *See generally* Compl., R.1. In 2023, the Board moved to dismiss Linney's Pizza's suit on statute-of-limitations grounds. The district court granted that motion, *Linney's Pizza, LLC v. Bd. of Governors of the Fed. Rsrv. Sys.*,

3

2023 WL 6050569, at *1 (E.D. Ky. Sept. 15, 2025), and Linney's Pizza appealed to this Court. While that appeal was pending, the Supreme Court clarified that an APA claim does not accrue until the plaintiff is injured by the final agency action. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S.Ct. 2440, 2460 (2024). Following *Corner Post*, the parties jointly moved to vacate and remand, and this case returned to district court for consideration of the merits.

This Court's mandate on remand was issued on October 28, 2024. *See* R.22, PageID#190. Two months later, Linney's Pizza and the Board submitted a joint motion for a scheduling order. *See* R.23, PageID#192-93. On January 8, 2025, the district court entered a scheduling order for the filing of cross-motions for summary judgment. *See* R.25, PageID#198-99. At no point during this time did the Banking Associations seek to intervene.

### C.    The Banking Associations belatedly moved to intervene, and the district court denied intervention.

The Banking Associations finally moved to intervene in the district court on January 27, 2025—over two years after this case was first filed, and three months since the case had returned to the district court. The Banking Associations sought intervention of right under Rule 24(a) and permissive intervention. *See* Mem., R.26-1, PageID#208-09.

The district court concluded that the Banking Associations were not entitled to intervene of right and denied permissive intervention. *See* Order, R.56, PageID#948-

66. In doing so, the district court made two key rulings. ***First***, the district court determined that the Banking Associations had failed to rebut the presumption of adequate representation or otherwise show that the Board was incapable of representing their interests. *Id.* at PageID#961-62. ***Second***, the district court determined that permissive intervention was inappropriate since intervention would only disrupt and delay resolving the case. *Id.* at PageID#964.

## D.  The Banking Associations declined to appeal the denial of intervention.

After the district court denied the Banking Associations' motion to intervene, the Banking Associations could have pursued an immediate appeal in this Court. They chose not to. Instead, they accepted the district court's denial of intervention, allowed the deadline for any appeal to expire, and participated in the proceedings below as amici curiae. *See* Amicus Brief, R.59.

The district court denied Linney's Pizza's motion for summary judgment and granted the Board's cross-motion for summary judgment. *See* Order, R.61, PageID#1070. Linney's Pizza appealed. *See* Notice, R.63, PageID#1106. Now, the Banking Associations have filed a new motion seeking to intervene on appeal.

## ARGUMENT

This Court should deny the Banking Associations' motion to intervene in this appeal. The Banking Associations tried to intervene before the district court, lost, and chose not to appeal that ruling to this Court. Given that history, asking this Court for leave to intervene on appeal is an act of procedural gamesmanship that this Court

should reject. In any event, the Banking Associations' arguments for intervention fail on all points: They are untimely, they cannot show that the Board is not adequately representing their interests, and the additional expense and inconvenience from adding new parties at this late stage forecloses permissive intervention.

The Banking Associations may seek to participate as amici curiae, as they did in the district court. This Court should reject this belated second attempt at intervention.

## I. The Banking Associations' new motion to intervene is "procedural gamesmanship" and should be rejected.

"[T]hose seeking to force their way into lawsuits between others generally must do so while the case is pending before a trial court rather than waiting to do so on appeal." *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 88 F.4th 495, 499 (4th Cir. 2023); *see also* 7C Wright & Miller, *Fed. Prac. & Proc. Civ.* §1916. Courts agree that for both intervention of right and permissive intervention, "the district court" should "resolv[e] these issues" in "the first instance." *Degamo v. Bank of America*, 849 F. App'x 620, 623 (9th Cir. 2021); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457 (7th Cir. 1997) (participation on appeal is not permitted "without first intervening in the district court").

Here, this principle applies even more strongly, because the Banking Associations did seek to intervene in the district court. And they lost—on both intervention of right and permissive intervention. If they still thought that their participation in this lawsuit was necessary, they could have immediately appealed that

denial of intervention, since "[a] district court's denial of intervention as of right is appealable." *Moses v. City of Perry*, 90 F.4th 501, 504 (6th Cir. 2024). But instead of doing so, the Banking Associations elected to "wait-and-see," *Cahoo*, 71 F.4th at 413, and allowed the Board to defend Regulation II.

Now, nearly a year later, they again seek intervention. This is nothing more than "procedural gamesmanship" to get a second bite at the apple. *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020). There is a well-established procedural path for protecting the Banking Associations' interests—intervention in the district court, followed by appellate review if that request is denied. "By not appealing," the Banking Associations "indicated [their] acceptance of that decision" and accepted their role as amici. *Diamond v. Charles*, 476 U.S. 54, 63 (1986). They should not be permitted to now "circumvent the rule[s]" or "escape the consequences of [their] noncompliance with traditional rules of appellate jurisdiction and procedure." *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000) (rejecting a "mo[tion] to intervene on appeal" since it was "in effect, an attempt to obtain appellate review lost by her failure to timely appeal the denial of her motion to intervene in district court").

This Court should, like its sister circuits, "police against attempts" to manipulate this Court's normal appellate process "by declining to seek review of an adverse district court decision and then filing a fresh motion to intervene on appeal." *Ass'n for Educ. Fairness*, 88 F.4th at 499. This is precisely why the courts of appeals have imposed "a steep threshold for allowing intervention on appeal." *Richardson*, 979 F.3d at 1105, such

as when a case presents the "unique situation[]" where an intervenor seeks to "prosecute an appeal that the existing party has determined not to take," Wright & Miller §1916, or where "the necessity of intervention did not arise until after judgement had been entered," *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999).

No such unique circumstances exist here. Unlike *Cameron v. EMW Women's Surgical Center*, this is not a case where the existing government party chose not to pursue an appeal, justifying a third party's intervention on appeal. 595 U.S. 267, 271 (2022). The Board successfully defended the Banking Associations' interests below and has signaled that it will defend against Linney's Pizza's appeal here. The Banking Associations' motion to intervene is simply "procedural gamesmanship," and this Court can deny the motion for that reason alone.

## II. The Banking Associations have no right to intervene on appeal, and in any event, cannot satisfy Rule 24(a)'s intervention-as-right factors.

When a case reaches appeal, there is no "rule allowing intervention," and intervention at the appellate stage is warranted only in "truly exceptional cases." *Richardson*, 979 F.3d at 1104. So when intervention is sought on appeal—rather than appealed from a denied intervention of right—the ultimate decision is still one of permissive intervention, even if intervention-of-right factors are considered. *See Cameron*, 595 U.S. at 278-79; *see also Richardson*, 979 F.3d at 1103.

The Banking Associations are wrong to imply that they have a right to intervene on appeal if they satisfy the intervention factors set out in Federal Rule of Civil Procedure 24(a). Those factors govern intervention only in district-court litigation, and they have no analog in the Federal Rules of Appellate Procedure. At most, those Rule 24(a) factors guide appellate courts' discretion in granting permissive intervention on appeal. And even setting that point aside, the Banking Associations cannot satisfy the Rule 24(a) factors. Their motion to intervene is untimely, and they cannot show that the Board is unable to represent their interests.

## A.    The Banking Associations' motion to intervene is untimely.

The Banking Associations' motion to intervene on appeal is far too late to be deemed "timely." The Banking Associations seek to intervene nearly three years after this case began, over fourteen months since the case was remanded for merits, and nearly one month after the appeal itself was brought. And they offer no compelling reason for either their delays at each sequential stage of the litigation, or for their failure to appeal from the district court's decision denying their motion to intervene below.

To "determine timeliness," this Court looks "to the totality of the circumstances," as measured by five factors. *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 490 (6th Cir. 2014). Specifically, this Court considers (1) "the point to which the suit has progressed," (2) "the purpose for which intervention is sought," (3) "the length of time preceding the application during which the proposed intervenor knew or should have known of their interest in the case," (4) "the prejudice to the original parties due

9

to the proposed intervenor's failure to promptly intervene after they knew or reasonably should have known of their interest in the case," and (5) "the existence of unusual circumstances militating against or in favor of intervention." *Id.* (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). All five factors show that the Banking Associations' motion to intervene is untimely.

**First**, this litigation has already progressed substantially since the case was first filed three years ago, in December 2022. The Banking Associations ask this Court to effectively treat the appeal as if it were its own freestanding lawsuit, arguing that "this *appeal*" has not yet "progressed," and they sought to intervene "at the outset of the appeal." Mot. (Doc. 13) at 16 (emphasis added). But the Banking Associations are wrong to pretend that the intervention timeliness clock resets at each new stage of litigation. The "critical factor" for timeliness is "what steps occurred along the litigation continuum" "between the filing of *the complaint* and the motion to intervene." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) (emphasis added). Were it otherwise, the timeliness requirement would always be satisfied, because a proposed intervenor could always assert that it was timely relative to the stage of the case at which it finally elected to intervene.

Many litigation "steps" have taken place—while the Banking Associations sat on the sidelines and watched—since the filing of the complaint. This case is over three years old. It has gone through a full round of dispositive briefing, an appeal to this Court, remand for litigation on the merits, and another round of dispositive briefing.

There has been one full year of merits litigation since the remand prompted by the Supreme Court's *Corner Post* decision. Yet the Banking Associations never sought to intervene at any point in those first two years of the litigation. Nor did it promptly seek to intervene when the remand for merits occurred. Their current motion to intervene is now *three years* late, which is "very late in the course of the litigation, by every measure." *Stupak-Thrall*, 226 F.3d at 474. The case cited by the Banking Association is not to the contrary. In *Cameron*, intervention on appeal was granted not because the intervention clock resets on appeal, but because the previous real-party-in-interest chose not to prosecute the appeal. *See* 595 U.S. at 271. That is a "unique circumstance" not presented here. Here, the Banking Associations sat on their hands and watched this litigation play out for two years before filing an untimely motion to intervene in the district court, losing that motion, and opting not to appeal. Another year has gone by, and this litigation has progressed substantially without their participation.

**Second**, neither of the Banking Associations' stated purposes for seeking intervention excuse their severe untimeliness. The Banking Associations claim that: (1) they have a "critical interest in this litigation" as "direct objects of Regulation II," and (2) their "need to seek intervention did not arise until" it became apparent that this case would reach the merits. Mot. (Doc. 13) at 17-18. Yet the Banking Associations' supposedly "critical interest" as "direct objects" of the challenged rule merely underscores their untimeliness rather than excusing it. Any such interest existed when the case was first filed. So, by waiting for three years since then, the Banking

Associations did *not* "act[] promptly in light of th[is] stated purpose" and "waited far too long to assert its claimed interest." *In re Auto. Party Antitrust Litig.*, 33 F.4th 894, 902 (6th Cir. 2022). And the Banking Associations' claim that the need to intervene did not arise until the merits stage is both "confusing and unrealistic." *Stupak-Thrall*, 226 F.3d at 476. For one thing, this Court has already condemned "wait[ing] in the wings" or taking a "wait-and-see approach" while other parties resolved preliminary procedural questions. *Cahoo*, 71 F.4th at 413 (cleaned up). And for another, even if the Banking Associations' need to intervene only arose at the merits stage, then the Banking Associations still should have intervened promptly when this Court remanded the case back in October 2024. *See supra* at 4. Since they did not intervene at that time—then forfeited their appeal of the denied intervention below and now file a new motion another year later—they did not "act promptly" in light of this "stated purpose" either. *In re Auto. Party Antitrust Litig.*, 33 F.4th at 902.

**Third**, the Banking Associations conceded below that they "have been aware of this litigation" since the earliest stages of the case. Mot., R.26-1, PageID#219. They therefore should have attempted to intervene "as soon as ... reasonably" possible after "they first became aware of the action." *United States v. Tennessee*, 260 F.3d 587, 594 (6th Cir. 2001) (cleaned up). This Court has said that adopting a "wait and see" approach for even just two months after becoming "actually ... aware" of a threatened interest is enough to defeat intervention. *United States v. City of Detroit*, 712 F.3d 925, 926-27, 931

12

(6th Cir. 2013); *see also Salem Pointe Capital, LLC v. BEP Rarity Bay, LLC*, 854 F. App'x 688, 698 (6th Cir. 2018) (untimely after five-month delay from knowledge).

The current motion to intervene comes nearly three years after the case began, over a year after the remand for the merits, and after the case reached judgment. The Banking Associations admit that they knew of the litigation at all points, yet offer "no persuasive excuse" for their continual delays. *Stupak-Thrall*, 226 F.3d at 478. This Court has already spoken on this exact situation—if proposed intervenor "admits that it has known about this litigation since the case began," and the "dispute has been to the Supreme Court and back" in that time, a years-late motion to intervene is "not timely." *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018).

***Fourth***, the Bank Associations' belated intervention will prejudice the parties and this Court. Intervention now will, at a minimum, result in additional briefs that either duplicate the Board's arguments or raise new issues that were not considered below. Requiring the existing parties to backtrack and address new issues would "add considerable delay and cost to the litigation," *Cahoo*, 71 F.4th at 413, and "undue delay and prejudice to the original parties," *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Adding more briefs and more new arguments will also further delay the resolution of this case, and additional delay prejudices Linney's Pizza, since "[e]ach day that" Regulation II is not vacated "translates as another day of lost income." *Stupak-Thrall*, 226 F.3d at 478. The prejudice factor therefore weighs heavily against intervention.

*Fifth*, the Banking Associations cannot point to any "unusual circumstances" that would otherwise excuse their untimeliness. *Stupak-Thrall*, 226 F.3d at 478. Again, this is not a case where the existing party chose not to pursue or defend an appeal. *See Cameron*, 595 U.S. at 278-79. The Banking Associations' only argument here is that they could not have predicted the Supreme Court's decisions in *Corner Post* and *Loper Bright* and how those would bear on this case. *See* Mot. (Doc. 13) at 19-20. That fails twice over. For one thing, Linney's Pizza's complaint foreshadowed the positions affirmed in *Corner Post* and *Loper Bright*, so the Banking Associations were always on notice of those principles. And for another, the *Corner Post* and *Loper Bright* decisions occurred in June and July of 2024, but the Banking Associations still did not try to intervene in the district court until January 2025—and after losing that attempt, again adopted a "wait and see" approach until now. So even the "unusual circumstance" they invoke underscores how long they delayed with no valid excuse.

In sum, all five timeliness factors weigh against the Banking Associations. This Court should therefore find that their motion to intervene on appeal is untimely.

**B.    The Board will adequately represent the Banking Associations' interests.**

The Banking Associations have also not shown that the Board inadequately represents their interests. The district court determined that the Banking Associations had failed to rebut the strong presumption that the government will adequately litigate this case, and thus, the Banking Associations did not meet their burden of showing that

14

the Board will not "adequately protect" their interests. Order, R.56, PageID#959-63. This Court should reach the same conclusion.

Contrary to the Banking Associations' suggestion, this is not a case where they need only make a "minimal" showing "that there is a potential for inadequate representation." Mot. (Doc. 13) at 23. That "minimal" burden only applies when the parties do not share the "same ultimate objective." *Michigan*, 424 F.3d at 444. This Court applies a "presumption of adequacy of representation" when intervenors seek the "same ultimate objective" as existing parties, and that presumption is strengthened when the existing party is a governmental entity with the "capacity" to "represent its constituents fairly and faithfully." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (cleaned up). Under this standard, "a movant fails to meet his burden of demonstrating inadequate representation when" (1) "no collusion is shown between the existing party and the opposition," (2) "the existing party does not have any interests adverse to the intervener," and (3) "the existing party has not failed in the fulfillment of its duty." *Albright v. Ascension Mich.*, 2024 WL 1114606, at *2 (6th Cir. Mar. 14) (cleaned up).

The Banking Associations have not even tried to make any of these showings. *Cf.* Order, R.56, PageID#961 (agreeing that "the 'Banking Associations advance no arguments or evidence that could rebut the presumption of adequacy'"). The Banking Associations have not claimed that there is "collusion" between Linney's Pizza and the Board. (There is not.) Neither have they claimed that the Board has any true "interests adverse to the" Banking Associations. (It does not, since they seek the same outcome.)

15

Nor can the Banking Associations credibly argue that the Board "failed in the fulfillment of its duty" to defend Regulation II, since the Board actively defended the rule in litigation before the district court. (And indeed, won.) The Banking Associations have thus failed to overcome the presumption of adequate representation by the Board.

Furthermore, the Board is an agency of the United States and is charged by law with defending Regulation II. Even if the Board and the Banking Associations may have slightly different motivations, they share the same "ultimate objective"— defending Regulation II and keeping the current standard in place. *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025); *see also Tri-State Generation & Transmission Ass'n. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1072-73 (10th Cir. 2015) ("[E]ven though a party seeking intervention may have different 'ultimate motivation[s]' from the governmental agency, where its objectives are the same, we presume representation is adequate."). Nothing suggests the Board will shrink from its duty in this appeal to defend Regulation II and its 21-cent fee cap. And, as the Banking Associations themselves admit, they seek to "defend their members' ability to continue to receive compensation"—i.e., they do not want Regulation II to be vacated. Mot (Doc. 13) at 4. Because the Banking Associations seek the same "ultimate outcome" as the United States government itself, they have not overcome the presumption of adequacy.

To try to escape the presumption of adequacy, the Banking Associations advance two different arguments. Neither works.

16

*First*, the Banking Associations claim that they have distinct "financial interest[s]" that will be harmed, and that this alone is enough to justify intervention. Mot. (Doc. 13) at 23. Yet this Court has repeatedly held that this sort of financial interest is subsumed by government representation. For example, this Court has ruled that "a putative intervenor does not possess the requisite interest where its 'primary interest' in the litigation" is to "protect the intervenor's own economic interests." *Reliastar Life Ins. Co. v. MKP Investments*, 565 F. App'x 369, 372 (6th Cir. 2014); *see also Blount-Hill v. Board of Educ. of Ohio*, 195 F. App'x 482, 486 (6th Cir. 2006) (rejecting proposed intervention where intervenors' "primary interest is economic" and sought to preserve a particular "funding structure" from which it benefited). As this Court has said, when the United States defends against alleged "statutory violations," a separate "interest in the economic component" does not create a distinct "interest" that justifies intervention. *United States v. Tennessee*, 260 F.3d 587, 595 (6th Cir. 2001); *see also Blount-Hill*, 195 F. App'x at 486 (a "claimed ... interest in the economic component ... is insufficient to comprise a substantial legal interest for purposes of ... intervention").

Nor is there any reason to think that the Banking Associations' financial interests create a *distinct* interest or manner of defending Regulation II. The Banking Associations spend several pages emphasizing their view that the debit-card standard fee should be even higher than what Regulation II adopted. They go so far as to claim that upholding Regulation II based on "the Board's argument would ultimately be adverse to the Associations' interests." Mot. (Doc. 13) at 25-26. In short, the Banking Associations

ask to defend the rule, while insisting that their special reason for defending the rule is that the rule injures them. But simultaneously claiming to be both champion and victim of the same rule is not "distinct interest" that justifies intervention; it is an argument at war with itself. Without this self-contradictory assertion, the Banking Association's "financial interest[s]" can be seen as nothing more than a desire to participate in this litigation because the banking industry turns a handsome profit from the Board's current interpretation of 15 U.S.C. §1693*o*-2. But financial benefit does not equal legal insight. The Banking Associations have done nothing to show that their financial gain from the Board's current statutory interpretation justifies intervention here.

The lone case cited by the Banking Associations in support of their "financial interests" argument does not help their case. *See Miller State AFL-CIP v. Miller*, 103 F.3d 1240 (6th Cir. 1997). Even in *Miller*, it was the decision to *not* take an appeal—not a separate financial interest in an actively litigated appeal—that justified intervention. There, the Court granted intervention only after determining that the governmental party "ha[d] not sought interlocutory review of the preliminary injunction," so the intervenor's interest was entirely unprotected absent intervention. *Id.* at 1248. The same is not true here.

**Second**, the Banking Associations claim an interest in making *different* statutory arguments than the Board. *See* Mot. (Doc. 13) at 26-27. But as this Court has said time and again, "[a] mere disagreement over litigation strategy ... does not, in and of itself, establish inadequacy of representation." *Albright*, 2024 WL 1114606, at *2 (quoting

*Bradley*, 828 F.2d at 1192); *see also Geier v. Sundquist*, 94 F.3d 644 (6th Cir. 1996). Again, the Banking Associations' different arguments all point to the conclusion that the Board's reading is wrong and that the debit-fee standard should actually be higher—a confusing proposition for intervenors who claim to be defending Regulation II, rather than seeking to vacate and replace it. And in any event, the Banking Associations are free to make their alternative arguments in an amicus brief. Their belief that their statutory arguments are better than the Board's arguments does not justify intervention.

## III. The Court should deny permissive intervention.

As Linney's Pizza explained, there is no right to intervene on appeal and all interventions on appeal are permissive interventions. *Supra* at 8. The Banking Associations' argument in favor of permissive intervention fails for five reasons:

***First***, the district court denied permissive intervention while this case was pending below. That decision would have been reviewed only for "abuse of discretion" if the Banking Associations had properly appealed rather than engaging in procedural gamesmanship. *Grainger v. Ottawa Cnty.*, 90 F.4th 507, 518 (6th Cir. 2024). The Banking Associations have made no attempt to show that the district court abused its discretion, and they should not be allowed to "skirt unfavorable standards of review" by seeking intervention in a new, freestanding motion in this Court. *Richardson*, 979 F.3d at 1105.

***Second***, as Linney's Pizza explained, the Banking Associations' motion to intervene on appeal is untimely. *Supra* at 9-14.

19

***Third***, when the government provides "adequate representation," the "case for permissive intervention diminishes, or disappears entirely." *Me. Republican Party v. Dunlap*, 2018 WL 2248583, at *2 (D. Me. May 16); *accord Kentucky v. EPA*, 2023 WL 2415219, at *3 (E.D. Ky. Mar. 8). As Linney's Pizza explained, the Banking Associations' interests are adequately represented by the Board's prosecution of this appeal. *Supra* at 14-18.

***Fourth***, the Banking Associations' belated intervention will unnecessarily prejudice the parties and this Court. *Supra* at 13-14. Adding another set of appellate briefs and additional oral argument on the same issues and same basic statutory arguments will only increase the time and expense incurred by all other parties and by this Court. Such increase in expense and inconvenience weighs against permissive intervention—particularly when the Banking Associations' statutory arguments are either identical to the Board's arguments, or would interject new, collateral issues. *Supra* at 16-18.

***Fifth***, the Banking Associations can raise whatever arguments they would like in an amicus brief. This is the customary approach followed by courts around the country. *Richardson*, 979 F.3d at 1106 ("To the extent Movants want their voices heard, however, the proper procedure is to move to appear as *amici curiae*, not to move to intervene."); *see also Herman*, 166 F.3d at 1254. The Banking Associations were able to fully present their arguments to the district court in an amicus brief. They can do so again here.

## CONCLUSION

The Court should deny the Banking Association's motion to intervene on appeal and allow them to participate as amici instead, as they did in the district court below.

Dated: December 15, 2025

Respectfully submitted,

*/s/ Tyler R. Green*

Tyler R. Green
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-6723
tyler@consovoymccarthy.com

Bryan K. Weir
Frank H. Chang
Cody Ray Milner
Consovoy McCarthy PLLC
1600 Wilson Blvd, Ste. 700
(703) 243-6723
Arlington, VA 22209
bryan@consovoymccarthy.com
frank@consovoymccarthy.com
cody@consovoymccarthy.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this response in opposition to a motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the portions of the document that are exempted by rule, this document contains 5,188 words. I further certify that this document complies with the typeface and type-style requires of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Garamond font.

Dated: December 15, 2025                              */s/ Tyler R. Green*
                                                      Tyler R. Green

## CERTIFICATE OF SERVICE

I certify that on December 15, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve a copy on all counsel of record.

Dated: December 15, 2025                              */s/ Tyler R. Green*
                                                      Tyler R. Green